IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

CALLIE HIRSCH,                    )
                                  )
        Plaintiff,                )
                                  )
v.                                )    No. 06-2258-dkv
                                  )
MEMPHIS CITY SCHOOLS              )
                                  )
        Defendant.                )

_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

_____

     This employment discrimination lawsuit arises out of the
employment relationship between the plaintiff, Callie Hirsch, and
the defendant, Memphis City Schools ("MCS").  Hirsch's amended
complaint alleges MCS violated Title VII of the Civil Rights Act of
1964, as amended, by retaliating against her for reporting sexual
harassment and discriminating against her because of her race,
color, and sex.  The parties have consented to the jurisdiction of
the undersigned United States Magistrate Judge.  Before the court
is MCS' motion for summary judgment.  For the reasons that follow,
MCS' motion for summary judgment is GRANTED.

STATEMENT OF UNDISPUTED FACTS

     For the purposes of this motion, the court finds that the
following facts are undisputed:[1]

_____

     [1]    These undisputed facts are taken from MCS' statement of
undisputed facts in its motion for summary judgment. (Doc. No.
32.) Hirsch did not file a response disputing any of the facts

1.    Hirsch is an African-American female and citizen of the United States who currently resides in Shelby county, Tennessee and was a resident of Shelby county when the events underlying the amended complaint occurred. (Am. Compl. ¶ 2, *Hirsch v. Memphis City Schools*, Civil Case No. 06-2258-dkv (W.D. Tenn., Sept. 7, 2006)).

2.    MCS is a school district in Tennessee organized under the Private Acts of Tennessee of 1866–1869, as amended. (Am. Compl. ¶ 3; Def. Mot. Summ. J. 4.)

3.    Hirsch is currently employed by MCS as a tenured elementary school teacher at Egypt Elementary. (Hirsch Dep. 18.)

4.    Hirsch was employed by MCS as an elementary school teacher at A.B. Hill Elementary ("A.B. Hill") at the time the events that are the subject of this lawsuit occurred. (Hirsch Dep. 20.)

5.    Hirsch was assigned to A.B. Hill for more than fifteen years. (Hirsch Dep. 20.)

6.    Hirsch held the position of "instructional facilitator" for the math wing of A.B. Hill for approximately five years until that position was eliminated, at which time she was assigned to the

---

listed as undisputed in that motion. Where possible, the court cites Hirsch's amended complaint and deposition testimony to demonstrate her stipulation of a fact. Otherwise, the court cites to the sworn affidavit of Tyrone Hobson and the unchallenged list of undisputed facts included in MCS' motion for summary judgment.

position of second grade teacher.  (Hirsch Dep. 27, 29, 31.)

7.  During the time Hirsch held the position of instructional facilitator at A.B. Hill, the position was filled by classroom teachers, was on the same salary step as classroom teachers, and received the same retirement benefits as classroom teachers. (Hirsch Dep. 21-22.)

8.  In 2001, Hirsch met with James Foster ("Foster"), an official employed by MCS in the division of personnel services. (Hirsch Depo. 84-85; Def. Mot. Summ. J. 5.)  During this meeting, Hirsch told Foster that Arthur Hull ("Hull"), the principal at A.B. Hill at that time, had sexually harassed her in 1998.  (Hirsch Depo. 48, 84.)

9.  In a report in Hirsch's employment file, Foster stated that he found no verification of Hirsch's complaint of sexual harassment by Hull.  (Hirsch Depo. 85.)

10.  In the fall of 2004, the principal at A.B. Hill at that time, Tyrone Hobson ("Hobson"), moved Alice Arnold ("Arnold") from the position of instructional facilitator at A.B. Hill to the position of assistant principal at A.B. Hill.  (Hobson Aff. ¶ 2; Hirsch Dep. 65.)

11.  Also in the fall of 2004, Hobson moved Elizabeth Calvert ("Calvert") from the position of classroom teacher at A.B. Hill to the position of instructional facilitator at A.B. Hill to replace Arnold.  (Hobson Aff. ¶ 2; Hirsch Dep. 65-66.)

12. Both Arnold and Calvert were acting as teachers on assignment in the respective positions of assistant principal and instructional facilitator at A.B. Hill in the fall of 2004 because the positions were temporary. (Hobson Aff. ¶ 2.) Neither received a pay raise based on their appointment to these positions. (Hobson Aff. ¶ 2.)

13. The position of assistant principal filled by Arnold was not posted for applications because the position was not permanent, as the school did not have enough students to qualify for a permanent assistant principal position at that time. (Hobson Aff. ¶ 2.)

14. The position of instructional facilitator was not posted for applications because the position was not permanent. (Hobson Aff. ¶ 2.)

15. Arnold is an African-American female. (Hobson Aff. ¶ 2; Hirsch Dep. 66.)

16. Calvert is a Caucasian female. (Hobson Aff. ¶ 2; Hirsch Dep. 66.)

17. Hobson made the decision to modify the duties of Arnold and Calvert by placing them in these interim positions to help him run A.B. Hill. (Hobson Aff. ¶ 2.)

18. After learning that Hobson had appointed Arnold and Calvert to these positions, Hirsch sent letters to the associate superintendent, the superintendent, and a commissioner of MCS.

(Hirsch Dep. Ex. 10–12.)

19. In Hirsch's letter to the associate superintendent, she stated that she had met with Hobson and expressed interest in the assistant principal position, complained that the positions of assistant principal and instructional facilitator were not posted because she would have been interested in applying, and stated that she felt "this may be a result of a previous sexual harassment complaint against Mr. Arthur Hull." (Hirsch Dep. Ex. 12.)

20. In Hirsch's letter to the commissioner, she restated the allegations in her letter to the associate superintendent verbatim and also stated that she had met with the associate superintendent to discuss the issue and did not feel the matter was handled appropriately. (Hirsch Dep. Ex. 11.)

21. In Hirsch's letter to the superintendent, she stated that despite her qualifications, she had been discriminated against by black professional educators and was not given a chance to apply for or serve in the positions of assistant principal or instructional facilitator. (Hirsch Dep. Ex. 10.) Hirsch also stated that the work environment at A.B. Hill was less than desirable, that she still suffered from a work injury that occurred in 2001, that she was the primary care giver for her mother with Alzheimer's disease, and that these facts did not help her to provide her students with the educational support they needed. (Hirsch Dep. Ex. 10.) Finally, she stated that the sexual

harassment claim she filed against Hull appeared to have kept her from obtaining an appropriate position based on her qualifications. (Hirsch Dep. Ex. 10.)

22. Hirsch never told Hobson that she had been sexually harassed. (Hobson Aff. ¶ 5.)

23. Hirsch never complained to Hobson that she had suffered any sexual discrimination. (Hobson Aff. ¶ 5.)

24. Hobson had no knowledge that Hirsch had ever complained of any sexual harassment or discrimination. (Def.'s Mot. Summ. J. 6.)

25. In December 2004, Hobson wrote to Jim Davis, the director of Labor and Employment Relations for MCS, recommending administrative transfer of Hirsch based on Hobson's belief that such a transfer would be in the best interest of both A.B. Hill and Hirsch. (Hobson Aff. ¶ 4.) Jim Davis supported the transfer and passed Hobson's recommendation on to the assistant superintendent. (Hobson Aff. ¶ 4.) Other MCS employees also approved the transfer. (Hobson Aff. ¶ 4.) The superintendent of MCS approved the administrative transfer of Hirsch to Egypt Elementary ("Egypt") effective January 18, 2005. (Hobson Aff. ¶ 4.)

26. Hirsch's teaching position at Egypt shares the same status, salary, and benefits as her previous position at A.B. Hill. (Hobson Aff. ¶ 4.) Hirsch has stated that things are going very well for her at Egypt and that she gets along well with her

administrator there.  (Hirsch Dep. 70.)

27.  Hirsch filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 27, 2005, alleging that MCS had discriminated against her based on her sex and had retaliated against her for reporting sexual harassment. (Hirsch Dep. Ex. 4.)    Specifically, Hirsch's charge of discrimination states that she "was given an unwarranted transfer . . . . [and] unlawfully discriminated against because of [her] Sex (Female) because [she] protested unwelcome sexual advances and comments which constitutes sexual harassment in violation of Title VII of the 1964 Civil Rights Act, as amended."  (Hirsch Dep. Ex. 4.)

28.  Hirsch received her right to sue letter January 31, 2006. (Am. Compl. 4.)

29.  Hirsch filed her complaint on May 2, 2006.  (Compl., *Hirsch v. Memphis City Schools*, Civil Case No. 06-2258-dkv (W.D. Tenn., May 2, 2006.))

## CONTENTIONS OF THE PARTIES

MCS argues that it is entitled to summary judgment because Hirsch's claims for race discrimination, color discrimination, and sexual harassment are not properly before this court and Hirsch has not established a prima facie case of sexual discrimination or retaliation.  Moreover, MCS states that even if this court finds that Hirsch has established a prima facie case of retaliation,

summary judgment is appropriate as to these claims because Hirsch has not offered any evidence to rebut the legitimate, non-discriminatory reason proffered by MCS for its actions.

Hirsch has not responded to MCS's motion for summary judgment. Pursuant to local rule, failure to timely respond to a motion may be deemed good grounds for granting the motion, however, that rule does not apply to motions requesting the dismissal of a claim or action. *See* Local Rule 7.2(a)(2). Additionally, under Rule 56 of the Federal Rules of Civil Procedure, the failure to properly respond to a motion for summary judgment alone is not sufficient grounds for granting summary judgment.[2] Therefore, despite the fact that Hirsch has not responded to MCS' motion, this court must determine whether any genuine issue of material fact exists sufficient to preclude an award of summary judgment and whether MCS is entitled to judgment as a matter of law. Nevertheless, the failure to respond to a motion for summary judgment inevitably tends to hinder a plaintiff's ability to avoid summary judgment as the plaintiff will not have set forth any affidavits or other materials

---

[2]    The pertinent part of that rule states:
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.   If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party.
FED. R. CIV. P. 56(e) (emphasis added).

"set[ting] forth specific facts to show that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

DISCUSSION

A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Sigler v. Am. Honda Motor Co.,* 532 F.3d 469, 482 (6th Cir. 2008); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993); *Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs.*, 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact at issue in the case. *Sigler,* 532 F.3d at 483. This may be accomplished by pointing out to the court that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

In response, the nonmoving party must go beyond the pleadings and present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material

facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993); *see also LaPointe*, 8 F.3d at 378. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247—48 (1986); *LaPointe*, 8 F.3d at 378.

In deciding a motion for summary judgment, "this [c]ourt must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251—52). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Patton*, 8 F.3d at 346; *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). However, to defeat a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252; *LaPointe*, 8 F.3d at 378. Finally, a district court considering a motion for summary judgment may not weigh evidence or make

credibility determinations. *Anderson*, 477 U.S. at 255; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

B.   <u>Race and Color Discrimination</u>

MCS contends that Hirsch's claims that MCS discriminated against her based on race and color are outside the jurisdiction of this court because Hirsch failed to exhaust her administrative remedies as to those claims.  The crucial issue is whether Hirsch's charge of discrimination filed with the EEOC would have prompted the EEOC to investigate whether MCS' alleged acts of discrimination may have been based on race or color jurisdiction.

In order for this court to have subject matter jurisdiction over a claim for relief under Title VII, the claimant must have exhausted all available administrative remedies. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379 (6th Cir. 2002)(citation omitted).  Thus, the claimant must present her claim to the EEOC before bringing that claim in court.  *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991).  The purpose of this requirement is to "trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (citing *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)).  Accordingly, a judicial complaint must be confined to the scope of the investigation that would reasonably be anticipated to grow from

the charge of discrimination the plaintiff filed with the EEOC. *Id.* (citing *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002)). However, courts should not narrowly construe an EEOC charge to preclude judicial claims filed by a plaintiff who was unrepresented by counsel when she filed the EEOC charge because of the remedial nature of Title VII. *Ang,* 932 F.2d at 546.

In the Sixth Circuit, a claimant's failure to check a box to include a specific claim of discrimination in the EEOC charge will not preclude the claimant from bringing that uncharged claim in a judicial complaint if the facts alleged in the charge should have caused the EEOC to investigate such a claim. *Dixon*, 392 F.3d at 217. However, each type of discrimination, such as race, color, and gender, is distinct from the others, and belonging to more than one minority group does not automatically expand the scope of a claimant's EEOC charge. *See Reynolds v. Solectron Global Servs.*, 358 F.Supp.2d 688, 692 (W.D. Tenn. 2005); *Ang*, 932 F.2d at 545. Thus, a claim in a judicial complaint that an action was motivated by a different type of discrimination than what was alleged in the EEOC charge will be precluded unless the newly-claimed basis for the act was sufficiently related to the facts of the EEOC charge. *See, e.g.*, *Reynolds*, F.Supp.2d at 692 (holding judicial claims of race and color discrimination could not be inferred from an EEOC charge's claim of sex discrimination); *Moore v. Allstate Ins. Co.*, 928 F.Supp. 744, 747-48 (N.D. Ill. 1996)(holding that a judicial

claim of sex discrimination was not reasonably related to an EEOC claim of race discrimination, but that a judicial claim of color discrimination was included within the EEOC charge's claim of race discrimination under the facts); *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 546 (6th Cir. 1991)(holding that an EEOC charge based on national origin discrimination was not sufficient allow a judicial complaint of race discrimination).

Hirsch's amended complaint includes sex, race, and color as bases for the alleged discrimination against Hirsch by MCS. However, the charge of discrimination Hirsch filed with the EEOC regarding the acts alleged in this lawsuit stated that MCS discriminated against Hirsch based only on sex. Hirsch's EEOC charge is decidedly limited in scope, with two sentences stating facts relevant to the administrative transfer to Egypt from A.B. Hill and Hirsch's rejection of unwelcome sexual advances. Moreover, the last sentence of the charge focuses only on gender, stating specifically that Hirsch "was unlawfully discriminated against because of [her] Sex (female)." This charge does not mention race or color or imply that there was any basis for the asserted discrimination beyond gender. Thus, even broadly construing Hirsch's EEOC charge, none of the facts alleged would have notified the EEOC that it should investigate whether MCS had committed the allegedly discriminatory and retaliatory acts because of Hirsch's race or color. Hirsch has not, therefore, exhausted her

administrative remedies as to these claims.  As such, the court lacks subject matter jurisdiction as to these claims and they are precluded from being litigated in this cause of action.

C.  Sexual Harassment

While it is not clear that Hirsch's amended complaint asserts a claim for sexual harassment, her EEOC charge attached to the amended complaint expressly alleges that Hirsch was sexually harassed in violation of Title VII.  It is also not clear whether Hirsch cites the sexual harassment as a claim or for the purpose of relating facts relevant to her claim for retaliation.  Regardless, MCS contends that any claim for sexual harassment Hirsch may have had is time barred and requests summary judgment on that claim.

Assuming that the amended complaint and Hirsch's EEOC charge could be construed as asserting a claim for sexual harassment, the only facts before the court that would support such a claim by Hirsch occurred in 1998.  Title VII requires a claimant to file a discrimination charge with the EEOC within 180 days of the alleged discrimination or within 300 days of such an occurrence if the claimant first instituted proceedings with a state or local agency. 42 U.S.C. 2000e-5(e)(1).  As Hirsch apparently failed to file any such charge within the applicable time limitations, the court finds that, if one assumes Hirsch's amended complaint and EEOC charge set forth a claim for sexual harassment, summary judgment is appropriate as to any such claim.

D.   Remaining Title VII Claims

     1.   Title VII Burdens

     For Hirsch's remaining claims, the court will apply the
framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S.
792 (1973) and subsequently modified in *Texas Department of
Community Affairs v. Burdine*, 450 U.S. 248 (1982).[3]   Under this
framework, the plaintiff has the initial minimal burden of setting
forth a prima facie case of discrimination under Title VII.  *White
v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008).
Once the plaintiff has established the prima facie case, the burden
shifts to the defendant to produce a legitimate, nondiscriminatory
reason for its actions at issue.  *Id.*  If the defendant successfully
rebuts the plaintiff's assertions of discrimination, the plaintiff
must then demonstrate by a preponderance of the evidence that the
legitimate reasons set forth by the defendant were pretextual.  *Id.*
at 391–92.  The ultimate burden of persuasion, however, never shifts
from the plaintiff.  *Id.* at 392.

     2.   Discrimination Based on Gender

     Hirsch's amended complaint states that although she was the
most qualified for the instructional facilitator position and

---

     [3]     The court will apply this framework because Hirsch has
not presented any direct evidence of discrimination by MCS, but
rather relies upon circumstantial evidence to demonstrate that
MCS discriminated against her.  *See, e.g., White v. Baxter
Healthcare Corp.*, 533 F.3d 381, 391 n.5 (6th Cir. 2008); *Grizzell
v. City of Columbus Div. Of Police*, 461 F.3d 711, 719 (6th Cir.
2006).

assistant principal, the position of instructional facilitator was awarded to a "white female with less seniority and no experience," while the vice principal position was awarded to a "female black with no experience." In response to these statements, which MCS interprets as asserting claims for discrimination based on sex and/or failure to promote, MCS states that Hirsch cannot set forth a prima facie case for either claim because both Hirsch and the individuals who were chosen to fill these positions are female.

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race color, sex, or national origin." 28 U.S.C. § 2000e-2(a)(1). In order to present a prima facie case of discrimination based on sex, one of the elements a plaintiff must establish is that she was replaced by someone outside the protected class or that someone outside the protected class was treated in a more favorable manner. *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007) (citation omitted). Similarly, one of the elements that a plaintiff must show in order to establish a prima facie case of discrimination based on failure to promote is that a person with similar qualifications who did not belong to the protected class received the promotion. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005) (citing *Nguyen v. City of Cleveland*, Inc., 241 F.3d 559, 562-63 (6th Cir. 1999).

Hirsch has not alleged that a person outside her protected class replaced her, was treated more favorably than her, or received a promotion instead of her. Rather, she has alleged that two females with less experience were awarded the positions for which she was the most qualified[4] and specifically focuses on the failure to post these positions such that she could have applied for them.[5] Even assuming these allegations are true, they do not state a cause of action under Title VII. As such, there is no genuine issue of material fact as to a claim of discrimination based on sex or failure to promote as Hirsch has failed to establish a prima facie case for either claim and summary judgment is granted.

3.   Title VII Retaliation Claims

Viewing the amended complaint as a whole in the context of the record and in a light most favorable to Hirsch, Hirsch appears to claim that MCS retaliated against her for her protected act of reporting the alleged sexual harassment by Hull[6] by both failing to

_____

[4]      The court notes that Hirsch's complaint points out that the female appointed to the position of instructional facilitator was white, while Hirsch is African American. However, as stated *supra*, any claim based on race or color discrimination is not properly before this court and therefore this distinction is not relevant to this inquiry.

[5]      It is undisputed that these positions were not posted. The court acknowledges that this fact could be relevant to a claim for failure to promote. *Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145-46 (6th Cir. 1989). However, the court does not reach this issue, as the facts alleged by Hirsch cannot establish a required element for a prima facie case of failure to promote.

[6]      Hirsch's amended complaint does not specifically set forth the protected actions Hirsch believes caused MCS and its

appoint her to the positions of instructional facilitator and vice principal and also administratively transferring her to Egypt Elementary. However, MCS alleges that Hirsch has failed to set forth the essential elements of a claim for retaliation. Moreover, MCS also states that, even if Hirsch has set forth a prima facie case for retaliation, she has failed to establish that the legitimate explanations MCS has set forth for Hobson's actions are pretextual. The court will first consider whether Hirsch has met her burden of establishing a prima facie case of retaliation before turning to the issue of whether Hirsch has shown MCS' proffered explanations are pretextual.

Title VII prohibits an employer from discriminating against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). In order to establish a prima facie case of retaliation, the plaintiff must show by a preponderance of the evidence that: (1) she acted in a manner protected by Title VII; (2) the defendant knew of this exercise of

---

agents to retaliate against her. However, her EEOC charge states that MCS discriminated against her for rejecting sexual advances which amounted to sexual harassment. MCS' motion for summary judgment presumes that the protected activity Hirsch considers to have motivated MCS' allegedly retaliatory actions was Hirsch's reporting of sexual harassment, which appears to be supported by Hirsch's deposition testimony and is a protected activity under 42 U.S.C. § 2000e-3(a). Thus, the court will consider Hirsch's act of reporting the sexual harassment by Hull as the protected activity Hircsh claims caused MCS to retaliate against her.

protected civil rights; (3) defendant subsequently took an action that was adverse to the plaintiff's employment; and (4) the adverse action had a causal connection to the protected activity. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008) (citation omitted). If the plaintiff does not present evidence sufficient to create a dispute of material fact as to an element of her claim, summary judgment is proper. *Mulhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002).

> a.  Failure to Appoint Hirsch as Instructional Facilitator or Vice Principal and to Post These Positions

Hirsch claims that the appointment of other, less-qualified individuals to the positions of vice principal and instructional facilitator was in retaliation for her complaint of sexual harassment by Hull. In opposition, MCS states that Hirsch has failed to present evidence that Hobson, the person responsible for the appointment of these individuals to these positions, had knowledge of Hirsch's complaint of sexual harassment when he made that decision. MCS asserts, therefore, that Hirsch has failed to set forth sufficient evidence to establish a prima facie case of retaliation.

The Sixth Circuit has held that, in order to establish a prima facie case and survive summary judgment on this issue, a plaintiff must present at least circumstantial evidence that would be sufficient to allow a reasonable jury to infer that the person

responsible for the adverse employment action knew of the plaintiff's protected activity when they took that action. *Mulhall*, 287 F.3d at 551–53. This evidence cannot be based solely on speculation or theories of conspiracy. *Id.* Moreover, mere interaction between a third party with knowledge of the protected activity and the person responsible for the adverse employment action before the action was taken will not be sufficient to allow an inference of knowledge on the part of the responsible party. *See id.* at 553 (distinguishing the facts of *Kralowec v. Prince George's County, Maryland*, 503 F.Supp. 985 (D. Md. 1980), where there was sufficient evidence to support an inference that the person responsible for the adverse action and a third party with knowledge would have discussed the protected action immediately when the third party learned of it before the adverse action was taken, with the facts of *Mulhall*, where there was no evidence that the third party had knowledge of the protected activity and no evidence to support an inference that, if the third party had such knowledge, he had shared it with the responsible parties beyond the adverse action itself).

The only information before the court that would support the assertion that Hobson knew of Hirsch's complaint of sexual harassment is Hirsch's deposition testimony, an excerpt of which was attached to MCS' motion for summary judgment. In this testimony, Hirsch states that her belief that Hobson knew of her complaint of

sexual harassment stems from the fact that someone who had knowledge of the protected activity[7] belonged to the same fraternal organization as Hobson, that Hobson and the third party with knowledge knew each other well, that she felt Hobson and the third party with knowledge had discussed the complaint, and the fact that she had more children in her classroom than other teachers. These speculative assumptions are insufficient to allow an inference that Hobson knew of these complaint of sexual harassment before deciding not to appoint Hirsch to the position of instructional facilitator or vice principal. Therefore, the court finds that Hirsch has failed to meet her burden and summary judgment is proper as to this claim of retaliation[8] and does not reach the issue of whether Hirsch has rebutted the legitimate, non-discriminatory reasons for its actions.

---

[7]     While it is not clear exactly who Hirsch is referring to, the context strongly suggests she is referring to Hull. However, Hirsch also testified in the deposition that she was only assuming that Hull had knowledge of the sexual harassment complaint and had no personal knowledge or direct evidence that he had that knowledge.

[8]     Hirsch also included the fact that the positions of instructional facilitator and vice principal were not posted at A.B. Hill in her amended complaint. The court views this assertion as insufficient to state a cause of action. However, to the extent this included fact could be construed as an allegation that Hobson's failure to post these positions was also in retaliation for the sexual harassment complaint, the court notes that the same reasoning which defeats Hirsch's retaliation claim based on the failure to appoint her to one of these positions would also apply to defeat a claim of retaliation based on the failure to post these positions.

b.    Administrative Transfer of Hirsch

MCS alleges that Hirsch has cannot demonstrate that the decision to administratively transfer her to Egypt from A.B. Hill was an adverse employment action.  In the alternative, MCS asserts that Hirsch has failed to establish that the decision to make the administrative transfer was causally connected to the sexual harassment complaint.  Moreover, MCS also argues that Hirsch has failed to rebut the legitimate, non-discriminatory explanations for its actions that it has set forth.  Thus, MCS argues that this claim must fail.  The court will first address whether Hirsch can establish the transfer was an adverse employment decision before turning to the issues of causation and rebuttal of the non-discriminatory explanations.

The provision of Title VII which prohibits retaliation protects an individual only from retaliatory actions which cause the claimant an injury or harm.  *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006).  Thus, to be wrongful under this provision, the employer's action must have been "materially adverse" such that it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* (citations omitted).  The Sixth Circuit has held that, in order to fall under this category, the action must

> be more disruptive than a mere inconvenience or an
> alteration of job responsibilities . . . . [such as]
> termination of employment, a demotion evidenced by
> a decrease in wage or salary, a less distinguished

title, a material loss of benefits, significantly
diminished material responsibilities, or other
indices that might be unique to a particular
situation.

*Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th
Cir. 2007)(quoting *Ford v. General Motors Corp.*, 305 F.3d 545, 553
(6th Cir. 2002). Moreover, it is well-established that
"reassignments without salary or work hour changes do not ordinarily
constitute adverse employment decisions" in the context of
employment discrimination. *Kocsis v. Multi-Care Mgmt., Inc.*, 97
F.3d 876, 885 (6th Cir. 1996). An objective standard applies to
determine whether an action is adverse, and the employer's actions
are viewed in the context of the particular situation. *Burlington
Northern*, 548 U.S. at 69.

There is no evidence before the court to show that Hirsch was
harmed or injured by way of the transfer to Egypt from A.B. Hill.
Rather, the evidence before the court establishes that Hirsch's
position at Egypt is, in relevant particulars, identical to her
position at A.B. Hill and that Hirsch is actually more content with
her new position. As such, there is no genuine issue of material
fact as to whether the administrative transfer to Egypt was an
adverse employment action, and the court will grant MCS' motion for
summary judgment on this retaliation claim without reaching the
issues of causation or rebuttal of MCS' legitimate explanations.

CONCLUSION

For the reasons stated above, MCS' motion for summary judgment
is granted.

IT IS SO ORDERED this 22nd day of September, 2008.

s/ Diane K. Vescovo
UNITED STATES MAGISTRATE JUDGE